# EXHIBIT B



Doc No **A10366067**

Certified, filed and/or recorded on
Oct 6, 2016 1:18 PM

Office of the County Recorder
Hennepin County, Minnesota
Martin McCormick, County Recorder
Mark Chapin, County Auditor and Treasurer

| | |
|---|---|
| Deputy 87 | Pkg ID 1455333E |
| Conservation Fee | $5.00 |
| Document Recording Fee | $46.00 |
| Environmental Response Fund (MRT .0001) | $5.56 |
| Mortgage Registration Tax (.0023 rate) | $127.78 |
| ***Document Total*** | $184.34 |

This cover sheet is now a permanent part of the recorded document.

Return To:
Southwest Financial Services, Ltd.
1671 Park Rd Suite 2
FT. Wright, KY 41011

Prepared By: Amber Henton
Southwest Financial Services, Ltd.
537 E Pete Rose Way, STE 300
Cincinnati, OH 45202



024828824-000954343

# MORTGAGE
(With Future Advance Clause)

1. **DATE AND PARTIES.** The date of this Mortgage (Security Instrument) is ....09/15/2016........... .
The parties and their addresses are as follows:

MORTGAGOR:
SHAWNEE HUIE, UNMARRIED

PARCEL: 11-028-24-42-0162

☐ If checked, refer to the attached Addendum incorporated herein, for additional Mortgagors, their signatures and acknowledgments.

LENDER:
U.S. Bank National Association,
a national banking association organized under the laws of the United States
425 Walnut Street
Cincinnati,OH 45202

2. **CONVEYANCE.** For good and valuable consideration, the receipt and sufficiency of which is acknowledged, and to secure the Secured Debt (defined below) and Mortgagor's performance under this Security Instrument, Mortgagor grants, bargains, sells, conveys and mortgages to Lender, with the power of sale, the following described property:
See attached Exhibit "A"

The property is located in ..HENNEPIN COUNTY.......................... at .............................
(County)

.4304 15TH AVE S, MINNEAPOLIS.............................................., Minnesota ..55407-3304.........
(Address)     (City)     (ZIP Code)

Together with all rights, easements, appurtenances, royalties, mineral rights, oil and gas rights, all water and riparian rights, ditches, and water stock and all existing and future improvements, structures, fixtures, and replacements that may now, or at any time in the future, be part of the real estate described above (all referred to as "Property").

**MINNESOTA - HOME EQUITY LINE OF CREDIT MORTGAGE** (NOT FOR FNMA, FHLMC, FHA OR VA USE)
© 1994 Wolters Kluwer Financial Services - Bankers Systems ™ Form USBOCPMTG-MN11/16/2012 6099AD 11/12

**3. MAXIMUM OBLIGATION LIMIT.** Notwithstanding anything to the contrary herein, the maximum principal indebtedness secured by this Security Instrument at any one time is $ ..55,555.00.............................. . This limitation does not include interest and any amount advanced by mortgagee in protection of the mortgaged premises or this mortgage, including but not limited to: taxes, assessments, charges, claims, fines, impositions, insurance premiums, amounts due upon prior or superior mortgages and other prior or superior liens, encumbrances and interest, legal expenses and attorneys' fees.

**4. SECURED DEBT AND FUTURE ADVANCES.** The term "Secured Debt" is defined as follows:

A. Debt incurred under the terms of all promissory note(s), contract(s), guaranty(ies) or other evidence of debt described below and all their extensions, renewals, modifications or substitutions. *(You must specifically identify the debt(s) secured and you should include the final maturity date of such debt(s).)*

Borrower(s): SHAWNEE HUIE
Principal/Maximum Line Amount: 55,555.00
Maturity Date: 09/16/2046
Note Date: 09/15/2016

B. All additional sums advanced and expenses incurred by Lender for insuring, preserving or otherwise protecting the Property and its value and any other sums advanced and expenses incurred by Lender under the terms of this Security Instrument.

**5. MORTGAGE COVENANTS.** Mortgagor agrees that the covenants in this section are material obligations under the Secured Debt and this Security Instrument. If Mortgagor breaches any covenant in this section, Lender may refuse to make additional extensions of credit and reduce the credit limit. By not exercising either remedy on Mortgagor's breach, Lender does not waive Lender's right to later consider the event a breach if it happens again.

**Payments.** Mortgagor agrees that all payments under the Secured Debt will be paid when due and in accordance with the terms of the Secured Debt and this Security Instrument.

**Prior Security Interests.** With regard to any other mortgage, deed of trust, security agreement or other lien document that created a prior security interest or encumbrance on the Property, Mortgagor agrees to make all payments when due and to perform or comply with all covenants. Mortgagor also agrees not to allow any modification or extension of, nor to request any future advances under any note or agreement secured by the lien document without Lender's prior written approval.

**Claims Against Title.** Mortgagor will pay all taxes, assessments, liens, encumbrances, lease payments, ground rents, utilities, and other charges relating to the Property when due. Lender may require Mortgagor to provide to Lender copies of all notices that such amounts are due and the receipts evidencing Mortgagor's payment. Mortgagor will defend title to the Property against any claims that would impair the lien of this Security Instrument. Mortgagor agrees to assign to Lender, as requested by Lender, any rights, claims or defenses Mortgagor may have against parties who supply labor or materials to maintain or improve the Property.

**Property Condition, Alterations and Inspection.** Mortgagor will keep the Property in good condition and make all repairs that are reasonably necessary. Mortgagor shall not commit or allow any waste, impairment, or deterioration of the Property. Mortgagor agrees that the nature of the occupancy and use will not substantially change without Lender's prior written consent. Mortgagor will not permit any change in any license, restrictive covenant or easement without Lender's prior written consent. Mortgagor will notify Lender of all demands, proceedings, claims and actions against Mortgagor, and of any loss or damage to the Property.

Lender or Lender's agents may, at Lender's option, enter the Property at any reasonable time for the purpose of inspecting the Property. Lender shall give Mortgagor notice at the time of or before an inspection specifying a reasonable purpose for the inspection. Any inspection of the Property shall be entirely for Lender's benefit and Mortgagor will in no way rely on Lender's inspection.

**Authority to Perform.** If Mortgagor fails to perform any duty or any of the covenants contained in this Security Instrument, Lender may, without notice, perform or cause them to be performed. Mortgagor appoints Lender as attorney in fact to sign Mortgagor's name or pay any amount necessary for performance. Lender's right to perform for Mortgagor shall not create an obligation to perform, and Lender's failure to perform will not preclude Lender from exercising any of Lender's other rights under the law or this Security Instrument.

**Leaseholds; Condominiums; Planned Unit Developments.** Mortgagor agrees to comply with the provisions of any lease if this Security Instrument is on a leasehold. If the Property includes a unit in a condominium or a planned unit development, Mortgagor will perform all of Mortgagor's duties under the covenants, by-laws, or regulations of the condominium or planned unit development.

**Condemnation.** Mortgagor will give Lender prompt notice of any pending or threatened action, by private or public entities to purchase or take any or all of the Property through condemnation, eminent domain, or any other means. Mortgagor authorizes Lender to intervene in Mortgagor's name in any of the above described actions or claims. Mortgagor assigns to Lender the proceeds of any award or claim for damages connected with a condemnation or other taking of all or any part of the Property. Such proceeds shall be considered payments and will be applied as provided in this Security Instrument. This assignment of proceeds is subject to the terms of any prior mortgage, deed of trust, security agreement or other lien document.

© 2001 Wolters Kluwer Financial Services - Bankers Systems ™ Form USBOCPMTG-MN 11/16/2012 6099AD 11/12

**Insurance.** Mortgagor shall keep Property insured against loss by fire, flood, theft and other hazards and risks reasonably associated with the Property due to its type and location. This insurance shall be maintained in the amounts and for the periods that Lender requires. What Lender requires pursuant to the preceding two sentences can change during the term of the Secured Debt. The insurance carrier providing the insurance shall be chosen by Mortgagor subject to Lender's approval, which shall not be unreasonably withheld. If Mortgagor fails to maintain the coverage described above, Lender may, at Lender's option, obtain coverage to protect Lender's rights in the Property according to the terms of this Security Instrument.

All insurance policies and renewals shall be acceptable to Lender and shall include a standard "mortgage clause" and, where applicable, "loss payee clause." Mortgagor shall immediately notify Lender of cancellation or termination of the insurance. Lender shall have the right to hold the policies and renewals. If Lender requires, Mortgagor shall immediately give to Lender all receipts of paid premiums and renewal notices. Upon loss, Mortgagor shall give immediate notice to the insurance carrier and Lender. Lender may make proof of loss if not made immediately by Mortgagor.

Unless otherwise agreed in writing, all insurance proceeds shall be applied to the restoration or repair of the Property or to the Secured Debt, whether or not then due, at Lender's option. Any application of proceeds to principal shall not extend or postpone the due date of the scheduled payment nor change the amount of any payment. Any excess will be paid to the Mortgagor. If the Property is acquired by Lender, Mortgagor's right to any insurance policies and proceeds resulting from damage to the Property before the acquisition shall pass to Lender to the extent of the Secured Debt immediately before the acquisition.

**Financial Reports and Additional Documents.** Mortgagor will provide to Lender upon request, any financial statement or information Lender may deem reasonably necessary. Mortgagor agrees to sign, deliver, and file any additional documents or certifications that Lender may consider necessary to perfect, continue, and preserve Mortgagor's obligations under this Security Instrument and Lender's lien status on the Property.

6. **WARRANTY OF TITLE.** Mortgagor warrants that Mortgagor is or will be lawfully seized of the estate conveyed by this Security Instrument and has the right to grant, bargain, convey, sell and mortgage, with the power of sale, the Property. Mortgagor also warrants that the Property is unencumbered, except for encumbrances of record.

7. **DUE ON SALE.** Lender may, at its option, declare the entire balance of the Secured Debt to be immediately due and payable upon the creation of, or contract for the creation of, a transfer or sale of all or any part of the Property. This right is subject to the restrictions imposed by federal law (12 C.F.R. 591), as applicable.

8. **DEFAULT.** Mortgagor will be in default if any of the following occur:

   **Fraud.** Any Consumer Borrower engages in fraud or material misrepresentation in connection with the Secured Debt that is an open end home equity plan.

   **Payments.** Any Consumer Borrower on any Secured Debt that is an open end home equity plan fails to make a payment when due.

   **Property.** Any action or inaction by the Borrower or Mortgagor occurs that adversely affects the Property or Lender's rights in the Property. This includes, but is not limited to, the following: (a) Mortgagor fails to maintain required insurance on the Property; (b) Mortgagor transfers the Property; (c) Mortgagor commits waste or otherwise destructively uses or fails to maintain the Property such that the action or inaction adversely affects Lender's security; (d) Mortgagor fails to pay taxes on the Property or otherwise fails to act and thereby causes a lien to be filed against the Property that is senior to the lien of this Security Instrument; (e) a sole Mortgagor dies; (f) if more than one Mortgagor, any Mortgagor dies and Lender's security is adversely affected; (g) the Property is taken through eminent domain; (h) a judgment is filed against Mortgagor and subjects Mortgagor and the Property to action that adversely affects Lender's interest; or (i) a prior lienholder forecloses on the Property and as a result, Lender's interest is adversely affected.
   **Executive Officers.** Any Borrower is an executive officer of Lender or an affiliate and such Borrower becomes indebted to Lender or another lender in an aggregate amount greater than the amount permitted under federal laws and regulations.

9. **REMEDIES ON DEFAULT.** If this is a conventional loan under Minn. Stat. § 47.20, Lender will give Mortgagor written notice of default prior to foreclosure, by certified mail at the address of the Mortgaged property or such other address Mortgagor may have designated to Lender in writing, unless the default consists of the sale of the Property without Lender's consent. The notice will specify: (a) the nature of the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is mailed by which the default must be cured; (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument and sale of the Property; (e) that the Mortgagor has the right to reinstate this Security Instrument after acceleration; and (f) that the Mortgagor has the right to bring a court action to assert the nonexistence of a default or any other defense of the Mortgagor to acceleration and sale. In addition to any other remedy available under the terms of this Security Instrument, Lender may accelerate the Secured Debt and foreclose this Security Instrument in a manner provided by law if Mortgagor is in default. In some instances, federal and state law will require Lender to provide Mortgagor with notice of the right to cure, or other notices and may establish time schedules for foreclosure actions. Upon default, Lender shall have the right, without declaring the whole indebtedness due and payable, to foreclose against all or any part of the Property. This lien shall continue as a lien on any part of the Property not sold on foreclosure.

*(page 3 of 5)*

At the option of Lender, all or any part of the agreed fees and charges, accrued interest and principal shall become immediately due and payable, after giving notice if required by law, upon the occurrence of a default or any time thereafter. If there is a default, Lender shall have the power of sale and may advertise and sell the property as a whole or in separate parcels at public auction to the highest bidder for cash and convey absolute title free and clear of all right, title and interest of Mortgagor at such time and place as Lender designates. If Lender invokes the power of sale, Lender shall give notice of the sale including the time, terms and place of sale and a description of the property to be sold as required by the applicable law in effect at the time of the proposed sale. Lender or its designee may purchase the Property at any sale.

Upon the sale of the Property and to the extent not prohibited by law, Lender shall make and deliver a deed to the Property sold which conveys absolute title to the purchaser. Lender shall apply the proceeds of the sale in the following order: (a) to all expenses of the sale, including but not limited to, reasonable attorneys' fees; (b) to all sums secured by this Mortgage; (c) any excess to the person or persons legally entitled to it. The recitals in any deed of conveyance shall be prima facie evidence of the facts set forth therein.

If the Property is sold pursuant to this section, Mortgagor, or any person holding possession of the Property through Mortgagor, shall immediately surrender possession of the Property to the purchaser at the sale. If possession is not surrendered, Mortgagor or such person shall be a tenant holding over and may be dispossessed in accordance with applicable law.

The acceptance by Lender of any sum in payment or partial payment on the Secured Debt after the balance is due or is accelerated or after foreclosure proceedings are filed shall not constitute a waiver of Lender's right to require complete cure of any existing default. By not exercising any remedy on Mortgagor's default, Lender does not waive Lender's right to later consider the event a default if it happens again.

10. **EXPENSES; ADVANCES ON COVENANTS; ATTORNEYS' FEES; COLLECTION COSTS.** If Mortgagor breaches any covenant in this Security Instrument, Mortgagor agrees to pay all expenses Lender incurs in performing such covenants or protecting its security interest in the Property. Such expenses include, but are not limited to, fees incurred for inspecting, preserving, or otherwise protecting the Property and Lender's security interest. These expenses are payable on demand and will bear interest from the date of payment until paid in full at the contract interest rate in effect as provided in the terms of the Secured Debt. Mortgagor agrees to pay all costs and expenses incurred by Lender in collecting, enforcing or protecting Lender's rights and remedies under this Security Instrument. This amount may include, but is not limited to, attorneys' fees, court costs, and other legal expenses. To the extent permitted by the United States Bankruptcy Code, Mortgagor agrees to pay the reasonable attorneys' fees Lender incurs to collect the Secured Debt as awarded by any court exercising jurisdiction under the Bankruptcy Code. This Security Instrument shall remain in effect until released. Mortgagor agrees to pay for any recordation costs of such release.

11. **ENVIRONMENTAL LAWS AND HAZARDOUS SUBSTANCES.** As used in this section, (1) Environmental Law means, without limitation, the Comprehensive Environmental Response, Compensation and Liability Act (CERCLA, 42 U.S.C. 9601 et seq.), and all other federal, state and local laws, regulations, ordinances, court orders, attorney general opinions or interpretive letters concerning the public health, safety, welfare, environment or a hazardous substance; and (2) Hazardous Substance means any toxic, radioactive or hazardous material, waste, pollutant or contaminant which has characteristics which render the substance dangerous or potentially dangerous to the public health, safety, welfare or environment. The term includes, without limitation, any substances defined as "hazardous material," "toxic substances," "hazardous waste" or "hazardous substance" under any Environmental Law.
Mortgagor represents, warrants and agrees that:

    A. Except as previously disclosed and acknowledged in writing to Lender, no Hazardous Substance is or will be located, stored or released on or in the Property. This restriction does not apply to small quantities of Hazardous Substances that are generally recognized to be appropriate for the normal use and maintenance of the Property.

    B. Except as previously disclosed and acknowledged in writing to Lender, Mortgagor and every tenant have been, are, and shall remain in full compliance with any applicable Environmental Law.

    C. Mortgagor shall immediately notify Lender if a release or threatened release of a Hazardous Substance occurs on, under or about the Property or there is a violation of any Environmental Law concerning the Property. In such an event, Mortgagor shall take all necessary remedial action in accordance with any Environmental Law.

    D. Mortgagor shall immediately notify Lender in writing as soon as Mortgagor has reason to believe there is any pending or threatened investigation, claim, or proceeding relating to the release or threatened release of any Hazardous Substance or the violation of any Environmental Law.

12. **ESCROW FOR TAXES AND INSURANCE.** Unless otherwise provided in a separate agreement, Mortgagor will not be required to pay to Lender funds for taxes and insurance in escrow.

13. **JOINT AND INDIVIDUAL LIABILITY; CO-SIGNERS; SUCCESSORS AND ASSIGNS BOUND.** All duties under this Security Instrument are joint and individual. If Mortgagor signs this Security Instrument but does not sign an evidence of debt, Mortgagor does so only to mortgage Mortgagor's interest in the Property to secure payment of the Secured Debt and Mortgagor does not agree to be personally liable on the Secured Debt. If this Security Instrument secures a guaranty between Lender and Mortgagor, Mortgagor agrees to waive any rights that may prevent Lender from bringing any action or claim against Mortgagor or any party indebted under the obligation. These rights may include, but are not limited to, any anti-deficiency or one-action laws. The duties and benefits of this Security Instrument shall bind and benefit the successors and assigns of Mortgagor and Lender.

14. **SEVERABILITY; INTERPRETATION.** This Security Instrument is complete and fully integrated. This Security Instrument may not be amended or modified by oral agreement. Any section in this Security Instrument, attachments, or any agreement related to the Secured Debt that conflicts with applicable law will not be effective, unless that law expressly or impliedly permits the variations by written agreement. If any section of this Security Instrument cannot be enforced according to its terms, that section will be severed and will not affect the enforceability of the remainder of this Security Instrument. Whenever used, the singular shall include the plural and the plural the singular. The captions and headings of the sections of this Security Instrument are for convenience only and are not to be used to interpret or define the terms of this Security Instrument. Time is of the essence in this Security Instrument.

15. **NOTICE.** Unless otherwise required by law, any notice shall be given by delivering it or by mailing it by first class mail to the appropriate party's address on page 1 of this Security Instrument, or to any other address designated in writing. Notice to one mortgagor will be deemed to be notice to all mortgagors.

16. **WAIVERS.** Except to the extent prohibited by law, Mortgagor waives all appraisement, dower and homestead exemption rights relating to the Property.

17. **LINE OF CREDIT.** The Secured Debt includes a revolving line of credit. Although the Secured Debt may be reduced to a zero balance, this Security Instrument will remain in effect until released.

18. **APPLICABLE LAW.** This Security Instrument is governed by the laws as agreed to in the Secured Debt, except to the extent otherwise required by the laws of the jurisdiction where the Property is located, and applicable federal laws and regulations.

19. **RIDERS.** The covenants and agreements of each of the riders checked below are incorporated into and supplement and amend the terms of this Security Instrument.
[Check all applicable boxes]
☐ Assignment of Leases and Rents ☐ Other ......................................................................................

20. ☐ **ADDITIONAL TERMS.**

**SIGNATURES:** By signing below, Mortgagor agrees to the terms and covenants contained in this Security Instrument and in any attachments. Mortgagor also acknowledges receipt of a copy of this Security Instrument on the date stated on page 1.

.................................................................... ....................................................................
(Signature) SHAWNEE HUIE                                     (Signature)

Loan Originator Organization ID: **402761**          Originator ID: **000001043005**

Loan Originator Organization:                        Originator Name: **OWEN FALCONER JOHNSON**
**U.S. Bank National Association**

ACKNOWLEDGMENT:
STATE OF ....Minnesota...................., COUNTY OF ....Hennepin....................} ss.
(Individual) This instrument was acknowledged before me this ......15th...... day of ....September 2016........
by SHAWNEE HUIE, UNMARRIED

....................................................................................................................................................

....................................................................................................................................................

My commission expires: Jan 31, 2019
(Seal)
.......................................................................
(Notary Public)

This instrument was prepared by ........................................................., of .........................................
.....................................................................................................

© 1994 Wolters Kluwer Financial Services - Bankers Systems      ™ Form USBOCPMTG-MN 11/16/2012 6099AD 11/12

(page 5 of 5)

DUSTIN WILLIAM MULLINS
Notary Public
Minnesota
My Comm. Expires
Jan 31, 2019

# EXHIBIT "A" LEGAL DESCRIPTION

Account #: ███8824
Order Date : 08/27/2016
Reference : 20162389120206
Name : SHAWNEE HUIE
Deed Ref : 9036050

Index #:
Registered Land:
Parcel #: 11-028-24-42-0162

SITUATED IN THE COUNTY OF HENNEPIN, STATE OF MINNESOTA, TO-WIT: SOUTH 29 FEET OF LOT 2, AND NORTH 15 FEET OF LOT 3, BLOCK 7, BLOOMINGTON PARK ADDITION TO MINNEAPOLIS.

SUBJECT TO ALL EASEMENTS, COVENANTS, CONDITIONS, RESERVATIONS, LEASES AND RESTRICTIONS OF RECORD, ALL LEGAL HIGHWAYS, ALL RIGHTS OF WAY, ALL ZONING, BUILDING AND OTHER LAWS, ORDINANCES AND REGULATIONS, ALL RIGHTS OF TENANTS IN POSSESSION, AND ALL REAL ESTATE TAXES AND ASSESSMENTS NOT YET DUE AND PAYABLE.

BEING THE SAME PROPERTY CONVEYED BY DEED RECORDED IN DOCUMENT NO. 211343, OF THE HENNEPIN COUNTY, MINNESOTA RECORDS.