**UNITED STATES DISTRICT COURT**

**DISTRICT OF MINNESOTA**

Shawnee Huie,

Plaintiff,

v. **Court File No. 26-cv-01603-JWB/DLM**

Trans Union LLC; Experian Information Solutions, Inc.; Equifax Information Services, LLC; JPMorgan Chase Bank, N.A.; Midland Credit Management, Inc.; Wells Fargo Bank N.A.; U.S. Bank N.A.; Discover Financial Services; and Capital One Inc.,

Defendants.

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT MIDLAND CREDIT MANAGEMENT, INC.'S MOTION FOR JUDGMENT ON THE PLEADINGS PURSUANT TO FED. R. CIV. P. 12(c)**

## INTRODUCTION

Defendant Midland Credit Management, Inc. ("Midland") moves to dismiss Plaintiff's Complaint under Federal Rule of Civil Procedure 12(c), arguing that Plaintiff failed to allege a specific inaccuracy in Midland's credit reporting and that her claims are foreclosed by Huie v. Trans Union LLC, 2026 WL 281454 (D. Minn. Jan. 22, 2026) ("Huie I"). Both arguments fail. The current Complaint is materially more specific than Huie I. Moreover, Midland's unique position as a debt buyer -- with no direct contractual relationship with Plaintiff and no firsthand knowledge of the original account terms -- makes its reinvestigation obligation heavier, not lighter, and makes the plausibility of inaccurate reporting stronger, not weaker. Midland's motion should be denied.

## BACKGROUND

### A. The Prior Lawsuit (Huie I)

On January 22, 2026, this Court dismissed Plaintiff's prior complaint in Huie I because the allegations were conclusory -- Plaintiff had not identified what specific information was inaccurate. 2026 WL 281454, at *2. The Court also found the bare allegation of CRA-to-furnisher notice was a "naked assertion" without factual enhancement. Id. at *3. Plaintiff

took those findings seriously and filed the current Complaint on February 23, 2026 with specific allegations designed to cure each deficiency.

**B. This Complaint (Huie II)**

The Complaint asserts a claim against Midland under 15 U.S.C. § 1681s-2(b). ECF 1, paras. 187-196. Plaintiff alleges that on June 5, 2025, she mailed a written dispute to Midland via USPS Certified Mail No. 9214 8901 4298 0419 7736 02, which was received on June 9, 2025 and signed by Jose Zavala, identifying specific disputed data fields on the Midland tradeline -- including Date Opened, High Credit, Credit Limit, Date Last Active, and Date of Last Payment. ECF 1, paras. 46-51. Plaintiff suffered concrete financial harm including denial of a $32,886.36 vehicle loan, financing forced at 24.99% APR, and housing-related harm. ECF 1, paras. 89-94.

**C. Midland's Prior Stricken Motion**

This Court previously struck Midland's first Motion to Dismiss (ECF 29) without prejudice for failure to comply with Local Rule 7.1(c)(1). ECF 34. Midland's current motion, while procedurally compliant, fares no better on the merits.

## LEGAL STANDARD

A Rule 12(c) motion is evaluated under the same standard as a Rule 12(b)(6) motion to dismiss. Potthoff v. Morin, 245 F.3d 710, 715 (8th Cir. 2001). The Court must accept all factual allegations as true and draw all reasonable inferences in Plaintiff's favor. Wishnatsky v. Rovner, 433 F.3d 608, 610 (8th Cir. 2006). A complaint survives if it contains sufficient factual matter to state a claim that is plausible on its face. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007). Pro se pleadings are held to less stringent standards than those drafted by lawyers. Erickson v. Pardus, 551 U.S. 89, 94 (2007).

## ARGUMENT

### I. THE COMPLAINT PLAUSIBLY ALLEGES INACCURACY IN MIDLAND'S CREDIT REPORTING.

Midland's central argument is that Plaintiff failed to identify specific inaccurate information. That argument mischaracterizes the Complaint and ignores the material differences between this case and Huie I.

Midland argues Plaintiff must identify the exact numerical value that should appear in each disputed field. But Rule 8 does not require that level of granularity. What is required is a plausible allegation that inaccurate information existed. Plaintiff has alleged the specific tradeline, the specific disputed data fields, the documented delivery of her dispute, and concrete financial harm flowing from the inaccurate reporting. The inference that the disputed fields were inaccurate or materially misleading is not speculative — it is the most reasonable reading of the facts alleged.

Moreover, Plaintiff's position is not that individual fields contain incorrect numerical values — it is that the entire tradeline is inaccurate because Midland had no contractual relationship with Plaintiff and therefore no legitimate basis to report any data whatsoever. Where no valid account relationship exists between a furnisher and a consumer, the correct reported value for every field is zero, and the correct disposition of the tradeline is deletion. Requiring Plaintiff to identify which specific dollar amount or date should replace each reported value would be nonsensical where the threshold issue is whether Midland had any right to report at all. The FCRA does not require a consumer to supply corrected values for an account that should never have appeared on her credit report in the first place.

## II. MIDLAND'S STATUS AS A DEBT BUYER MAKES INACCURATE REPORTING MORE PLAUSIBLE, NOT LESS.

Midland is a debt buyer. It has no direct contractual relationship with Plaintiff and no firsthand knowledge of the original account terms, payment history, or account origination data. Midland purchased this debt -- originally a Capital One Quicksilver account -- on the secondary market, inheriting whatever records the seller chose to transfer. This structural reality is directly relevant to the plausibility of Midland's reporting being inaccurate.

Courts have recognized that debt buyers face heightened accuracy challenges precisely because they rely on secondhand data of uncertain reliability. See Brim v. Midland Credit Management, Inc., 795 F. Supp. 2d 1256 (N.D. Ala. 2011) (finding Midland liable under the FCRA for reporting inaccurate information on a purchased debt account). When Midland reports data fields like Date Opened, High Credit, or Date of Last Payment, it is reporting information it did not originate and cannot independently verify from firsthand records. The plausibility of inaccuracy in those fields is greater, not lesser, than it would be for an original creditor reporting its own account data.

Midland's reinvestigation obligation under 15 U.S.C. § 1681s-2(b) is correspondingly more demanding. A furnisher that cannot independently verify the accuracy of data it did not originate has a stronger obligation to investigate thoroughly and correct or delete unverifiable information. Midland's motion does not address this structural reality at all. That silence is telling.

## III. THE FCRA DOES NOT REQUIRE PLAINTIFF TO SUPPLY THE CORRECTED VALUES FOR DISPUTED FIELDS.

Midland's motion implicitly demands that Plaintiff identify not just what she disputed, but what the correct values should be for each disputed data field. This demand inverts the statutory scheme and finds no support in the text of the FCRA.

The statute imposes the duty to investigate and determine accuracy on the furnisher -- not the consumer. Upon receiving notice of a dispute, a furnisher must "conduct an investigation with respect to the disputed information" and "review all relevant information provided by the consumer reporting agency." 15 U.S.C. § 1681s-2(b)(1)(A)-(B). The furnisher must then report the results of that investigation and correct or delete any information it cannot verify. 15 U.S.C. § 1681s-2(b)(1)(C)-(E). At no point does the statute require the consumer to provide the corrected values -- because that is the furnisher's job.

Plaintiff's obligation was to identify what she disputed. She did so with specificity: she named the tradeline, identified the disputed data fields, mailed her dispute via certified mail, and

confirmed delivery. What the correct values should be is precisely what a reasonable reinvestigation by Midland would have uncovered -- particularly given that Midland, as a debt buyer, had an affirmative obligation to verify the accuracy of inherited data before furnishing it to the CRAs in the first place.

To hold otherwise would effectively eliminate FCRA furnisher liability at the pleading stage for debt buyers -- entities that are among the most common sources of credit reporting errors -- and would punish consumers for lacking access to records they never had and that the furnisher is obligated to maintain.

**IV. THE COMPLAINT PLAUSIBLY ALLEGES CRA NOTICE TO MIDLAND.**

Midland's duties under 15 U.S.C. § 1681s-2(b) are triggered upon receipt of notice from a CRA that a consumer has disputed information. Anderson v. EMC Mortg. Corp., 631 F.3d 905, 907 (8th Cir. 2011). Plaintiff alleges, on information and belief, that one or more CRAs transmitted her dispute to Midland pursuant to 15 U.S.C. § 1681i(a)(2). This allegation is not a bare assertion -- it is grounded in the documented fact that Plaintiff submitted disputes to the CRAs regarding the Midland tradeline and received reinvestigation results from those CRAs. A CRA can only issue a reinvestigation result after transmitting the dispute to the furnisher and receiving a response. The inference of CRA-to-Midland notice is the only reasonable inference from those documented facts. Pleading on information and belief is proper where, as here, the operative facts are within the exclusive possession of the defendant and the CRAs. Arista Records, LLC v. Doe 3, 604 F.3d 110, 120 (2d Cir. 2010).

**V. MIDLAND'S RELIANCE ON HUIE I IS MISPLACED.**

Midland's motion is largely built on Huie I, suggesting the prior dismissal compels the same result here. It does not. Huie I was dismissed without prejudice -- specifically to allow Plaintiff to cure the identified deficiencies. Plaintiff did exactly that. The Complaint must be evaluated on its own allegations. The differences are material: Huie I had no identified account numbers, no specific data fields, no certified mail tracking numbers, no documented delivery confirmation. Huie II has all of these. Amendment worked as the system intends.

**VI. LEAVE TO AMEND IS NOT AT ISSUE -- PLAINTIFF HAS ALREADY FILED HER MOTION TO AMEND.**

Midland urges the Court to dismiss with prejudice and deny leave to amend. That argument is moot. On July 26, 2026, Plaintiff filed a Motion for Leave to File First Amended Complaint (ECF 90), which is currently pending before this Court. The First Amended Complaint adds specific factual allegations that further address any pleading deficiencies Midland has identified. Dismissal with prejudice before the Court rules on the pending motion to amend would be premature and would not serve the interests of justice. Rule 15(a) instructs that leave to amend shall be freely given when justice so requires, and no scheduling order has closed amendment deadlines in this case.

**CONCLUSION**

Plaintiff's Complaint plausibly alleges that Midland violated 15 U.S.C. § 1681s-2(b) by verifying inaccurate or materially misleading information without conducting a reasonable investigation, after receiving notice of Plaintiff's disputes from one or more CRAs. Midland's

unique status as a debt buyer with no firsthand knowledge of the original account data makes the plausibility of inaccurate reporting stronger, not weaker, and makes its reinvestigation obligation more demanding, not less. The Complaint is not the conclusory pleading rejected in Huie I. Midland's Motion to Dismiss should be denied in its entirety.

Dated: July 28, 2026

Respectfully submitted,

/s/ Shawnee Huie
Shawnee Huie, Plaintiff, Pro Se
6417 Penn Ave S Suite 7-144
Minneapolis, MN 55423
Shawnee@LuckyEliza.com
(323) 940-9979

**CERTIFICATE OF SERVICE**

I hereby certify that on July 28, 2026, I caused a true and correct copy of the foregoing Plaintiff's Memorandum of Law in Opposition to Defendant Midland Credit Management, Inc.'s Motion for Judgment on the Pleadings to be served upon their counsel of record via the Court's CM/ECF electronic filing system.

And upon all other counsel of record who have appeared in this action via CM/ECF.

Dated: July 28, 2026

/s/ Shawnee Huie

Shawnee Huie, Plaintiff, Pro Se

6417 Penn Ave S Suite 7-144

Minneapolis, MN 55423

Shawnee@LuckyEliza.com

(323) 940-9979